**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

JAMES MTUME,

                Plaintiff,

– against –

SONY MUSIC ENTERTAINMENT,

                Defendant.

**OPINION AND ORDER**

18 Civ. 11747 (ER)

Ramos, D.J.:

James Mtume, a musician, songwriter, activist, and radio personality, brings this action against Sony Music Entertainment ("Sony") seeking declaratory relief. Doc. 31. Before the Court is Sony's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Doc. 41. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

### A. Statutory Background

Under the Copyright Act, there are two avenues by which authors, including songwriters, or their successors, can terminate copyright grants. Section 304 of the Act describes a process for terminating grants that were executed prior to 1978 for works that were copyrighted and created as of January 1, 1978. 17 U.S.C. § 304. Section 203 sets forth a termination process for grants that were executed in or after 1978, irrespective of when the work was copyrighted.[1] *Id.* § 203.

Certain works, however, fit into neither category. These are works that were transferred and/or assigned by an agreement dated before January 1, 1978, but were not created until after

---

[1] Works made for hire are outside the scope of both termination provisions. 17 U.S.C. §§ 203(a), 304(c), 304(d).

this date. They are referred to as "gap works." Similarly, the term "gap grants" refers to pre-1978 agreements that concern works that were not created until 1978 or later. Because § 203 applies only to works with grants that were executed in or after 1978, gap works did not initially fit under § 203's framework. This changed in December 2010, when the Copyright Office opined that § 203 would be the relevant provision for gap grants and allowed termination notices for gap grants to be recorded under this provision. U.S. Copyright Office, *Analysis of Gap Grants under the Termination Provisions of Title 17*, p. i (2010), http://www.copyright.gov/reports/gap-grant-analysis.pdf; 37 C.F.R. § 201.10(f)(1)(ii)(C). In doing so, the Copyright Office noted that the recordation of termination notices was "without prejudice to how a court might ultimately rule on whether any particular document qualifies as a notice of termination within the scope of section 203, consistent with longstanding practices for all notices of termination recorded by the Office." Gap in Termination Provisions, 76 Fed. Reg. 32,316 32,320 (June 6, 2011).[2]

Parties may terminate grants under § 203 five years from "the end of thirty-five years from the date of execution of the grant," but if the grant "covers the right of publication of the work," that five-year period begins "at the end of thirty-five years from the date of publication of the work . . . or at the end of forty years from the date of execution of the grant, whichever term ends earlier." 17 U.S.C. § 203(a)(3). In relevant part, the statute provides that

> The [termination] notice shall state the effective date of the termination, which shall fall within the [specified five-year period], and the notice shall be served not less than two or more than ten years before that date. A copy of the notice shall be recorded in the Copyright Office before the effective date of termination, as a condition to its taking effect.

---

[2] Courts have yet to address whether § 203 applies to "gap works." Doc. 31 ¶ 3. Though this issue is raised in the case, the Court need not address it at this juncture.

*Id.* § 203(a)(4)(A). During this two- to ten-year period and after the termination notice has been served, the grantor may only enter into a valid agreement to make a further grant with the original grantee, or with that grantee's successor in title. *Id.* § 203(b)(4).

According to the legislative history, this period was included in the statute to provide the original grantee additional bargaining power. Though this period was referred to as being "in the nature of a 'right of first refusal,'" H.R. Rep. No. 94-1476, at 127 (1976), subsequent cases have clarified that the term "right of first refusal" was used imprecisely. *See Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987) ("The statute provides merely that an agreement between the terminating party and the terminated grantee prior to the effective date of termination is the only one that is valid and enforceable against the [terminating party]. The statute does not provide that any agreement negotiated by the terminating party must first be offered on the same terms to the terminated grantee, which is what a right of first refusal, as it is commonly understood, would require."). "The provision does give the terminated grantee,"—in the instant case, Sony—"a preferred competitive position[,] but if the author can afford to wait for competitive offers until after the effective date of termination, he can overcome any advantage the grantee or successor may seek to gain from the preferential position." *Id.* at 865–66 (internal quotation marks and citations omitted); *see also Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 26 (2d Cir. 2015) ("This existing-grantee exception was included in the 1976 Act to give the grantee some advantage over others in obtaining the terminated rights." (internal quotation marks and citations omitted)).

## B. Factual Background

Mtume is "an award-winning musician, songwriter, activist, and radio personality." Doc. 31 ¶ 7. His instant dispute with Sony involves an eight-song album titled *Juicy Fruit*. *Juicy Fruit* is a "gap work" because it was released in the United States in 1983 pursuant to an

agreement made between Mtume and Zembu Productions, Inc. ("Zembu") in 1977 (the "1977 Agreement"). *Id.* ¶¶ 12–16. According to the 1977 Agreement, Mtume "agreed to render, on an exclusive basis, his services as a recording artist, and to deliver to [Zembu] long playing (LP) record albums consisting of master recordings embodying Mtume's musical performances." *Id.* ¶ 13. As part of the agreement, Mtume also granted Zembu all rights of copyright to these master recordings. *Id.* ¶ 14. Zembu assigned the 1977 Agreement to CBS Records, Inc. ("CBS") on August 27, 1979. *Id.* ¶ 15. On June 6, 1983, CBS obtained a copyright registration for all of the recordings on the album. *Id.* ¶¶ 17–18. Sony subsequently acquired CBS in 1987 and became the successor in interest with respect to copyright interests in all of the sound recordings created under the 1977 Agreement, including *Juicy Fruit*. *Id.* ¶ 19.

In July 2015, Mtume sent a termination notice (the "2015 Notice") to Sony regarding two albums—*Kiss the world goodbye* and *In search of the rainbow seekers*—and one song—"Juicy Fruit, pt. 2 (reprise); Juicy Fruit,"[3]—all three of which were created under the 1977 Agreement. *Id.* ¶ 20. Sony subsequently informed Mtume via three separate letters that it believed the 2015 Notice was ineffective for several reasons, including that the sound recordings were works for hire[4] and therefore not subject to termination under the Copyright Act, and that the sound recordings created pursuant to the 1977 Agreement were not subject to termination under § 203 of the Copyright Act, presumably because Sony believes § 203 does not apply to "gap works."

---

[3] The song "Juicy Fruit, pt. 2 (reprise); Juice Fruit" is a remix single which was released prior to the *Juicy Fruit* album and which is also on the album.

[4] A work made for hire is defined as "a work prepared by an employee within the scope of his or her employment; or a work specially ordered or commissioned for use as a contribution to a collective work." 17 U.S.C. § 101. Section 203 is inapplicable to these works. *Id.* § 203(a).

*Id.* ¶¶ 21–22. The 2015 Notice is the subject of a related lawsuit between Mtume and Sony currently pending before this Court.[5] *Id.* ¶ 23.

On October 1, 2018, Mtume sent Sony another termination notice, this time in reference to the sound recordings on the *Juicy Fruit* album (the "2018 Notice"). *Id.* ¶ 24. The Copyright Office recorded the Termination Notice on December 19, 2018. *Id.* According to the notice, the effective date of termination is October 9, 2020. *Id.*, Ex. A. Sony has yet to respond to the 2018 Notice.

### C. Procedural History

Mtume initiated this action on December 14, 2018 for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and the Copyright Act, 17 U.S.C. § 203. Doc. 1. He subsequently amended the Complaint on June 4, 2019 to indicate that the 2018 Notice had been recorded by the Copyright Office. Doc. 31. Specifically, Mtume requests a declaration that the sound recordings on the *Juicy Fruit* album are terminable pursuant to § 203 of the Copyright Act and that the 2018 Notice is valid and complies with the provisions of 17 U.S.C. § 203.

Sony filed the instant motion to dismiss on August 9, 2019. Doc. 41. It argues that Mtume's request for declaratory judgment is unripe because Sony has yet to respond to the 2018 Notice and therefore has taken no position on its validity. In response, Mtume argues that Sony's position toward the 2015 Notice is sufficient to create a concrete dispute between the parties.

The Court agrees with Sony.

---

[5] In that case, the Court recently denied Sony's motion to dismiss Mtume's claims under Federal Rule of Civil Procedure 12(b)(6). *Mtume v. Sony Music Entm't*, 18 Civ. 6037 (ER), 2019 WL 4805925 (S.D.N.Y. Sept. 30, 2019). The Court presumes familiarity with the underlying facts in that case.

5

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings . . . ." *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

## III. DISCUSSION

Sony argues that dismissal is warranted because Mtume's claim for declaratory relief regarding the 2018 Notice is not ripe. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "case of actual controversy" indicated by the statute refers to the types of "cases" and "controversies" justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "A declaratory judgment action is ripe for judicial review only if 'there is a substantial controversy, between parties having adverse legal interests,

of sufficient immediacy and reality to warrant the issuance of a declaratory judgement.'" *Toto, Inc. v. Sony Music Entm't*, 60 F. Supp. 3d 407, 418 (S.D.N.Y. 2014) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d. Cir. 2005)). The Second Circuit has held that "[w]here the contingent event upon which the controversy rests is unlikely to occur, the controversy lacks 'sufficient immediacy and reality' to warrant declaratory relief." *In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1988). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree . . . ." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Ripeness is a twofold inquiry, including both constitutional and prudential questions. *See Simmonds v. I.N.S.*, 326 F.3d 351, 356–58 (2d Cir. 2003). "The first of these ripeness requirements . . . goes, in a fundamental way, to the existence of jurisdiction." *Id.* at 357. Constitutional ripeness "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Id.* However, the second "is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." *Id.* "[W]hen a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." *Id.*

Sony's argument sounds primarily in concerns over prudential ripeness. However, "[it] is the obligation of a court, on its own motion, to inquire as to subject matter jurisdiction and satisfy itself that such jurisdiction exists." *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361–62 (2d Cir. 2000) (citation omitted). The Court will therefore consider whether Mtume's action for declaratory judgment is both constitutionally and prudentially ripe.

7

### A. Constitutional Ripeness

"Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). The first requirement of constitutional standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Nat'l Org. for Marriage*, 714 F.3d at 688 (quoting *Lujan*, 504 U.S. at 560). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted).

It is undisputed that Sony has taken no action in response to the October 2018 Notice. The central question, then, is whether Sony's statements regarding the 2015 Notice indicate a position towards the October 2018 Notice that is concrete, rather than conjectural, so as to create a dispute between the parties. In its responses to the 2015 Notice, Sony maintains that it "believes that the Work[s] [are] . . . work[s] made for hire and [are] thus not subject to termination under any circumstances," and that "to the extent the recordings at issue were created pursuant to a grant contained in a 1977 agreement, we do not believe that such recordings could potentially be subject to Section 203 of the Copyright Act." Doc. 31, Exs. B–D. On its face, the second statement is not cabined to Sony's position towards the works referenced in the 2015 Notice, but rather is phrased as Sony's general position towards gap works at large. It appears clear, then, that there is a live dispute between the parties as to whether

8

recordings created pursuant to the 1977 Agreement—like the *Juicy Fruit* album at issue here—are terminable under § 203.[6]

Furthermore, Mtume alleges that, "[b]y refusing to recognize [his] termination rights, including the ability to recapture gap grants under Section 203, Sony has created a cloud over Mtume's future copyright ownership in the sound recordings [included in the album] and made it difficult, if not impossible, for Mtume to exploit these valuable copyright assets." Doc. 31 ¶ 27. Sony maintains that this injury is speculative at best because the Copyright Act prevents Mtume from entering into enforceable contracts until the effective date of termination. However, nothing in the Act prevents Mtume from entering into negotiations concerning its copyright. *Bourne*, 675 F. Supp. at 865 ("The statute neither compels the terminating party to negotiate with the terminated grantee, nor forbids him from negotiating with anyone else. All it requires is that prior to the effective date of termination, the terminated grantee is the only person with whom the author or his successor can make an enforceable and effective agreement to transfer those rights."). Notwithstanding Mtume's ability to *begin* negotiating, courts in other circuits have found similar circumstances sufficient for ripeness purposes because of the uncertainty these notices create regarding a grantor's future ability to consummate these negotiations. *See Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015) (finding allegations "that the notices of termination immediately clouded [the Foundation's] ability to assess its future income stream and to rely on the royalties" sufficient for ripeness purposes). This Court agrees.

---

[6] Notably, Sony has not extinguished this dispute with regards to the *Juicy Fruit* album by entering into a covenant not to sue or otherwise. *See, e.g.*, *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) ("Accordingly, in intellectual property cases, when a declaratory judgment plaintiff seeks a declaration that an asserted right is invalid or otherwise unenforceable and the declaratory defendant provides the plaintiff with a covenant not to sue for infringement of that right, that covenant can extinguish any current or future case or controversy between the parties, and divest the district court of subject matter jurisdiction." (internal quotation marks and citation omitted)).

The Court therefore finds that the case is ripe for purposes of Article III. However, the Court must also consider prudential concerns before deciding whether to exercise its jurisdiction.

### B. Prudential Ripeness

"Prudential ripeness is . . . a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Simmonds*, 326 F.3d at 359 (citing Alexander M. Bickel, *The Supreme Court 1960 Term Foreward: The Passive Virtues*, 75 Harv. L. Rev. 40, 58–64 (1961)). To determine whether a claim is prudentially ripe, courts in this Circuit consider "(1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104 (2d Cir. 2014) (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)). "The fitness analysis is concerned with whether the issues sought to be adjudicated are contingent on unknowable future events." *Id.* (citing *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008)). As to the second prong, "'[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship.'" *Grandeau*, 528 F.3d at 134 (quoting *Simmonds*, 326 F.3d at 359)).

Sony's position towards works created pursuant to the 1977 Agreement is "not so uncertain as to create a purely hypothetical case unfit for review under Article III," but the level of uncertainty in this case "does reduce the adjudicative fitness of the issues." *Simmonds*, 326 F.3d at 360. In other words, the issue may be better resolved at a later time, when Sony has had

an opportunity to articulate its position towards the works in the *Juicy Fruit* album at issue here.[7] Indeed, Sony may never take a position at all. Business, legal, or other reasons may counsel that the instant conflict between Mtume and Sony be resolved without court intervention. Alternatively, Sony may challenge the validity of the 2018 Notice for completely unrelated reasons, in which case a decision by this Court now would have done little to resolve the conflict and would be purely advisory in nature.

In support of its position that the Court should not delay hearing his claim, Mtume relies heavily on *Century of Progress Productions v. Vivendi S.A.*, 16 Civ. 7733 (DMG), 2018 WL 4191340, at *15 (C.D. Cal. Aug. 28, 2018). However, *Vivendi* is distinguishable. In that case, Plaintiffs served separate termination notices concerning the movie *This is Spinal Tap* on Studiocanal and on UMG, both of which were subsidiaries of Vivendi. 2018 WL 4191340, at *3. Plaintiffs sought to recapture rights in the motion picture and musical compositions from Studiocanal, and in the sound recordings from UMG. *Id.* Only Studiocanal opposed the termination notice. *Id.* at *14. After finding that UMG had "not taken a position to moot the dispute," the Court concluded that "it would be inefficient" to consider Plaintiffs' rights vis-à-vis Studiocanal and UMG in two separate suits. *Id.* at *15–16. No such judicial economy concerns are present here. Indeed, quite the opposite, as almost identical questions are raised by Mtume's first lawsuit, which indisputably concerns a live dispute between the parties.

Finally, neither party would be significantly harmed by the adjudication of this matter at a later time, if and when Sony responds to the 2018 Notice. Mtume currently has to right to initiate and continue negotiations over the *Juicy Fruit* album, but he is prohibited from entering

---

[7] Mtume requests jurisdictional discovery on the question of whether Sony has yet to take a position on the validity of the 2018 Notice. Doc. 44 at 10 n.8. However, the undisputed fact that Sony has not yet communicated any such position to Mtume is itself dispositive on the issue. Accordingly, this request is denied.

into any binding agreements regarding the work as per the Copyright Act. 17 U.S.C. § 203(b)(4); *Bourne*, 675 F. Supp. at 865. This is true irrespective of whether the Court decides the instant case prior to termination. Thus, Mtume does not face "the choice between abandoning his rights or risking prosecution," the "dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *MedImmune*, 549 U.S. at 129 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)). There is therefore no reason for this Court to prematurely answer questions that may never be raised with respect to this particular work. Because further factual development may inform the Court's decision at relatively little present harm to either party—in other words, because Mtume's claims may be *better* heard at a later time—the Court declines to exercise jurisdiction. *See Simmonds*, 326 F.3d at 359.

## IV. CONCLUSION

For the foregoing reasons, Sony's motion to dismiss is GRANTED without prejudice. The Clerk of Court is respectfully directed to terminate the motion, Doc. 41, and to close the case.

It is SO ORDERED.

Dated: February 19, 2020
        New York, New York

                                                      Edgardo Ramos, U.S.D.J.